UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UTICA MUTUAL INSURANCE COMPANY, | * * * |
| Plaintiff, | * * |
| v. | * Civil Action No. 1:13-cv-11471-IT * |
| HERBERT H. LANDY INSURANCE AGENCY INC, | * * * |
| Defendant. | * |

MEMORANDUM & ORDER

October 28, 2014

TALWANI, D.J.

I.  Introduction

Plaintiff UTICA Mutual Insurance Company ("UTICA") filed the instant action seeking a declaration of its rights and responsibilities pursuant to the terms of a professional-liability insurance contract that it issued to Defendant Herbert H. Landy Insurance Agency Inc ("Landy") concerning an action pending in California state court between Landy and CRES Insurance Services, LLC ("CRES") (the "underlying action")[1]. Before the court are Landy's Motion for Partial Summary Judgment [#46] and UTICA's Motion for Summary Judgment [#47]. For the following reasons, Landy's motion is ALLOWED and UTICA's motion is DENIED.

---

[1] The underlying action, CRES Ins. Servs. LLC v. Sun Coast Gen. Ins. Agency, Inc., Herbert H. Landy Ins. Agency, Inc., Alexander Anthony Ins., LLC, d/b/a Alexander Anthony Ins. Agency, LLC, and Does 1 to 100, No. 30-2009-00332596-CU-BT-CJC, is pending in the Superior Court for the State of California, Orange County. See Statement Undisputed Material Facts Supporting Utica Mot. Summ J. ¶ 4 [#49] [hereinafter UTICA Facts].

II. <u>Facts</u>[2]

   A.   *The Parties*

Defendant Landy is an insurance agent, broker, and general managing agent specializing in the placement of professional-liability coverage for non-medical professionals, including real estate agents and brokers.  Def.'s Mot. Partial Summ J., Statement Undisputed Material Facts ¶ 1 [#46] [hereinafter Landy Facts]; UTICA Facts ¶ 1 [#49].  CRES is a competitor of Landy in the California real estate professional-liability insurance market, who sued Landy, among others, in California for allegedly placing real estate coverage for California applicants with non-admitted surplus lines insurers even though similar coverage was allegedly available from admitted insurers.  Landy Facts ¶ 12.  Landy was insured for the period of March 17, 2009 to March 17, 2010 under an agents-and-brokers Errors & Omissions (E&O) policy issued by Plaintiff UTICA.  Id. ¶ 15; UTICA Facts ¶ 23-24.

   B.   *UTICA's Policy*

The policy issued by UTICA under which Landy was insured provides the following general grant of coverage in Section II(1)(a):

> a.   We will pay on behalf of the insured all "loss" to which this insurance applies.  We will have the right and the duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false, or fraudulent.  However, we will have no duty to defend an insured against any "suit" to which this insurance does not apply.

UTICA Facts ¶ 25; Landy Facts ¶ 23.  Section II(1)(e) further provides that

---

[2] This court sets forth the facts as provided by the parties in their statements of material facts. Consistent with Local Rule 56.1, "[m]aterial facts of record set forth in the statement[s] . . . will be deemed . . . to be admitted . . . unless controverted by" the opposing party's statement.

2

> e. The "loss" must arise out of <u>"wrongful acts"</u> committed in the conduct of the insured's business, wherever committed or alleged to have been committed, by the insured or any person for whose "wrongful acts" the insured is legally liable <u>in rendering or failing to render professional services</u> as:
>
> (1) A General Insurance Agent;
> (2) An Insurance Broker;
> (3) An Insurance Agent;
> (4) A Managing, Master, or Brokerage General Agent;
> . . . .
> (7) A Surplus Lines Broker;
> . . . .

UTICA Facts ¶ 27; Landy Facts ¶ 26 (emphasis added).

Section I of the policy defines "suit" to include, in part, "a civil proceeding in which damages because of a 'loss' are alleged." Landy Facts ¶ 26. In this section, the terms "loss" and "wrongful act" are also defined as follows:

> (6) "Loss" means any amount which an insured becomes legally obligated to pay as damages for any "claim" arising out of a "wrongful act" to which this insurance applies and shall include judgments and settlements. To the extent allowed by law, "loss" shall include punitive or exemplary damages. "Loss" shall not include:
>
> > a. Fines or penalties imposed by law;
> >
> > . . . .
> >
> > c. Matters which may be deemed uninsurable under the law pursuant to which the policy shall be construed.
>
> (14) "Wrongful act" means any negligent act, error, or negligent omission to which this insurance applies.

Id.; UTICA Facts ¶ 27.

Finally, Section III of the policy provides the following three relevant exclusions from coverage:

3

> 1. Any active and deliberate, dishonest, criminal, fraudulent, malicious, or knowing conduct committed or alleged to have been committed by or at the direction of the insured. If a "suit" is brought against the insured alleging both "wrongful acts" within the coverage of the policy and dishonest, fraudulent, malicious, or criminal conduct, then we will defend the insured in the trial court, but we shall not have any liability for any judgment for dishonest, fraudulent, malicious, or criminal conduct nor shall we have any further obligation to defend after judgment in the trial court. This exclusion applies only to insureds who participated in, acted with knowledge of, or acquiesced to such conduct.
>
> . . . .
>
> 4. Any liability for money received by an insured or credited to an insured for fees, premiums, taxes, commissions, loss payments, or escrow or brokerage monies.
>
> . . . .
>
> 9. Discrimination or unfair competition of any type.

UTICA Facts ¶ 28, Landy Facts ¶¶ 28-30.

  *C.* *The Underlying Action*

  In January 2013, CRES filed a Verified Third Amended Complaint, alleging causes of action for (1) unfair business practices in violation of California Business and Professions Code § 17200, et seq. and (2) negligent interference with prospective economic advantage. Landy Facts ¶ 14; UTICA Facts ¶ 16. According to CRES, an "Admitted Market" of numerous insurance companies licensed to write real estate agents-and-brokers E&O insurance exist in California, and non-admitted surplus lines insurers may provide insurance to real estate agents and brokers only "in the unusual or exceptional circumstance typically involving distressed accounts, custom terms, specialized underwriting expertise, coverage flexibility, larger limits, or other characteristics unattractive to the Admitted Market." UTICA Facts ¶ 9-10. CRES alleges that premiums for Admitted Market policies are higher than those for comparable policies from the non-admitted market, and that Landy is violating California law by placing E&O coverage

4

with surplus lines insurers to take advantage of the lower premium when an adequate market exists among admitted insurers for such coverage.  Id. ¶ 11-13.

Based on these allegations, CRES first alleges a cause of action for unfair business practices in violation of California Business and Professions Code § 17200, et seq.  According to CRES, because Landy's conduct violates § 1763 of California's Insurance Code, that conduct constitutes unfair competition within the meaning of California Business and Professions Code § 17200.  Landy Facts Ex. A ¶ 29; UTICA Facts Ex. 1A ¶ 29 [hereinafter Underlying Compl.].

In its second cause of action, CRES alleges a claim for negligent interference with prospective economic advantage.  Under this claim, CRES contends that Landy "knew that by offering nonadmitted insurance for a lower price to [those] who previously obtained their insurance on an admitted basis from CRES, that CRES' relationships with those [customers] would be interfered with and disrupted if [Landy] failed to act with reasonable care in the solicitation and placement of [those policies]."  Id. ¶ 41.  CRES emphasizes that Landy "failed to act with reasonable care," id. ¶ 42, and further contends that Landy "failed to conduct a diligent search of the admitted market, filed falsified documentation relating to the search, and evaded scrutiny for the exportation by failing to file required statements," id. ¶ 43.

These actions, according to CRES, has caused it to suffer "economic harm, including, but not limited to, loss of profits from sales to current and potential customers . . . , as well as the future loss of sales by way of renewals of [those] policies."  Id. ¶ 47.  In the third amended complaint's formal prayer for relief, CRES seeks restitution, disgorgement, costs, and attorneys' fees, as well as "such other and further relief as [the court] may deem just and proper," but does not specifically seek damages.  Id., 21.

D.  *Action for Declaratory Relief*

Landy promptly notified UTICA of CRES' claims, and UTICA appointed California counsel to represent Landy in the underlying action. Landy Facts ¶¶ 17-18. In October 2010, UTICA's attorney sent Landy a reservation of rights letter stating that UTICA's policy provides no coverage to Landy for CRES' claims, but that UTICA would continue to provide Landy with a defense to the underlying action pending the outcome of a declaratory judgment action. Id. ¶ 19; UTICA Facts ¶ 6. UTICA has thus far provided Landy with a defense to CRES' claims while bringing the instant action for declaratory judgment.

E.  *Further Developments in the Underlying Action*

While this declaratory action has been pending, one of Landy's co-defendants in the underlying action moved to strike CRES' demands to recover attorneys' fees, restitution, and disgorgement. Landy Facts Ex. 7B. The California court allowed that motion without leave to amend insofar as it pertained to the demands for restitution and disgorgement and explained that "[c]ompensation for a lost business opportunity is not restitution." Id. Thereafter, CRES moved for leave to file a fourth amended complaint, which deleted its prayers for restitution and disgorgement, but added a prayer for compensatory damages. Request Jud. Notice Supp. UTICA Mot. Summ J. Ex. A [#58]. The California court denied the motion for leave to amend, Landy Facts Ex. C, and CRES petitioned the Court of Appeal of the State of California, Fourth Appellate District, for a writ of mandate directing the lower court to allow CRES to amend its prayer for damages. Landy Submission Doc. Jud. Notice [#69]. The appeals court denied the petition. Second Request Jud. Notice Supp. UTICA Mot. Summ. J. [#68].

III.  Discussion

The parties do not dispute that Massachusetts law governs the interpretation of the policy

issued by UTICA to Landy. See Mem. Supp. Landy Mot. Partial Summ J.; UTICA Mem. Supp. Mot. Summ. J. "The interpretation of an insurance contract and the application of policy language to known facts present questions of law for the judge to decide." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 530 (Mass. 2003). The initial question of an insurer's duty to defend "is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." Id. (quoting Continental Cas. Co. v. Gilbane Bldg. Co., 461 N.E.2d 209, 212 (1984)). "The underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage" and "[t]here is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." Id. at 531 (quotation marks and citation omitted). The insured bears the burden of proving that its claims fall within a policy's grant of coverage. Nat'l Union Fire Ins. Co. v. West Lake Acad., 548 F.3d 8, 14 (1st Cir. 2008). If the insured satisfies this burden, the insurer must then prove that an exclusion applies in order to avoid coverage. Id.

UTICA argues on two fronts that it has no defense or indemnity obligation to Landy in the underlying action. First, UTICA makes several arguments that CRES' claims fall outside of the policy's initial grant of coverage. Second, it argues that, even assuming that CRES' claims fall within the policy's initial grant of coverage, policy exclusions operate to exclude coverage.

   A.   *Initial Grant of Coverage*

      (1)   Wrongful Act

In its motion for summary judgment, UTICA first argues that CRES' claims do not involve "wrongful acts" as that term is defined in the policy. Relying on Massamont Ins.

7

Agency, Inc. v. Utica Mut. Ins. Co., 489 F.3d 71, 75 (1st Cir. 2007), UTICA maintains that the court must "ascertain the gravamen of the underlying claim" to determine whether the alleged conduct involved "wrongful acts" or arose out of the "rendering or failing to render professional services" under Section II(1)(e) of the policy. UTICA Mem. Supp. Mot. Summ. J. at 7. The gravamen of the third amended complaint, UTICA argues, is that Landy unfairly competed with CRES by illegally offering lower premiums via the surplus lines market—conduct which does not constitute a "wrongful act" or involve the rendering of "professional services." Id. at 8.

The court finds that this argument is rebutted by the causes of action alleged in the third amended complaint. Although UTICA is correct that the third amended complaint alleges that Landy unfairly competed with CRES by way of intentional illegal conduct, CRES also alleges that Landy negligently interfered with CRES' prospective economic advantage. This negligence claim—based on CRES' allegation that Landy failed to act with reasonable care—makes the complaint 'reasonably susceptible' to an interpretation that it states or adumbrates a claim for negligence, which falls under the policy's definition of "wrongful act." See Landy Facts ¶ 26; Utica Facts ¶ 27. Put differently, even if CRES cannot demonstrate at trial that Landy acted intentionally or unfairly competed with CRES, CRES may still be able to recover on a theory of negligence. Unlike the negligence allegations involved in Massamont Ins. Agency, Inc., which were set forth as background, see id. at 73, the negligence allegations here comprise an independent cause of action for which Landy may be held liable, see Landy Facts ¶ 14; Utica Facts ¶ 16. Accordingly, CRES' complaint states a claim that may make Landy liable for a "wrongful act" as defined in the policy.

  (2) Professional Services

After finding that the underlying complaint alleges conduct constituting a "wrongful act,"

the court must ascertain whether the allegedly wrongful act involved the rendering of "professional services." As used in professional-liability insurance policies, the term "professional services" refers to acts or services that "exact[] the use or application of special learning or attainments of some kind" and arises out of "a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." Roe v. Fed. Ins. Co., 587 N.E.2d 214, 217 (Mass. 1992) (quotation marks and citation omitted). In determining whether a particular act constitutes a "professional service," the court "must look not to the title or character of the party performing the act, but to the act itself." Id.

Relying on Massamont Ins. Agency, Inc., UTICA again argues that the gravamen of the third amended complaint is one of unfair competition, which does not implicate the rendering of professional services. CRES' complaint, however, alleges, at the very least, that Landy "failed to act with reasonable care in the solicitation and placement of Real Estate Agents and Brokers E&O Insurance policies." Underlying Compl. ¶ 41. The court finds that the conduct of which CRES alleges Landy was negligent—the solicitation and placement of insurance with an insurer—falls within the definition of "professional services" under Massachusetts law. Such conduct is professional in nature, involves specialized knowledge and training, and is an "activit[y] that distinguish[es] a particular occupation from other occupations . . . and from the ordinary activities of life or business," Med. Records Assocs., Inc. v. Am. Empire Surplus Lines Ins. Co., Inc., 142 F.3d 512, 515 (1st Cir. 1998).

Moreover, UTICA's argument that professional-services coverage is not intended to cover claims by competitors also misses the mark. In making this argument, UTICA relies on Welch Foods, Inc. v. Nat'l Union Fire Ins. Co., No. 09-12087, 2010 WL 3928704 (D. Mass. Oct.

9

1, 2010), where the insured, who had been sued for false advertising and deceptive labeling, had a policy covering it for losses arising from negligence in performing "promotional and marketing services." Id. at *1. In holding that the false advertising claims did not fall under the coverage for "promotional and marketing services," the court stated that "professional services coverage is not intended to cover claims by competitors." Id. at *5. This remark, however, is best understood as an explanation for why most claims from an insured's competitor—such as the false advertising claim in Welch Foods—are not intended to be covered as a loss arising from the performance of "professional services." Such claims are not intended to be covered because, as the court in Welch Foods explained, they "pertain to how the insured does business rather than breach of professional duties." Id. Here, however, CRES has brought an independent cause of action based on Landy's negligence in performing its professional duties, which differs from a claim pertaining to how Landy operates its business. Cf. Visiting Nurse Ass'n v. St. Paul Fire and Marine Ins. Co., 65 F.3d 1097, 1100, 1102 (3d Cir. 1995) (finding that the insured's liability was not based on professional services where the complaint alleged claims that the insured conspired with hospitals to monopolize referrals, engaged in a pattern of racketeering activity, and intentionally interfered with the plaintiff's prospective contractual relations with patients).

      (3)    Loss

UTICA also argues that the policy's definition of "loss" precludes coverage because CRES' complaint does not include a prayer for damages. As stated above, the California Superior Court barred CRES from seeking restitution or disgorgement for its claims, Landy Facts Ex. 7B, and denied CRES' motion for leave to amend its complaint to include a prayer for compensatory damages, Request Jud. Notice Supp. UTICA Mot. Summ J. Ex. C. CRES then sought relief by petitioning the Court of Appeal of the State of California, Fourth Appellate

District, for a writ of mandate directing the lower court to allow CRES to amend its prayer for damages, Landy Submission Doc. Jud. Notice, but that court denied the petition, Second Request Jud. Notice Supp. UTICA Mot. Summ. J.

Despite these recent developments, CRES has not been barred from seeking damages from Landy based on its cause of action for negligence. Under its second cause of action, CRES alleges that it suffered "economic harm, including, but not limited to, loss of profits from sales to current and potential customers . . . , as well as the future loss of sales by way of renewals of [those] policies." Underlying Compl. ¶ 47. Although CRES did not explicitly seek damages in its prayer for relief for the economic harms that it allegedly suffered, CRES did include the catch-all prayer for relief that the California court "may deem just and proper," Underlying Compl., 21. Moreover, during oral argument on CRES' petition, the California appeals court explained that its ruling merely precluded granting CRES "leave to file the physical document" and noted that it did not foreclose a request to allow an amendment of the pleadings to conform to the evidence presented at trial. See Landy Submission Doc. Jud. Notice [#72].

Generally, the fact that a plaintiff may decide to seek damages in the future by amending its pleading before or at trial does not make its complaint "reasonably susceptible" of an interpretation that it currently states or adumbrates a claim for damages, see Herbert A. Sullivan, Inc., 788 N.E.2d at 530. However, where, as under the specific circumstances of the underlying action, (1) the complaint alleged economic harm resulting from a negligence claim, but erroneously prayed for restitution and disgorgement instead of damages, (2) the California appeals court noted that, although CRES may not have leave through a discretionary writ to file a fourth amended complaint for damages, CRES has not been foreclosed from seeking an amendment of the pleadings to conform to the evidence presented at trial, and (3) CRES alleged

a prayer for all relief that is just and proper, "[t]he underlying complaint . . . show[s], through general allegations, a possibility that the liability claim falls within the insurance coverage," Herbert A. Sullivan, Inc., 788 N.E.2d at 531 ("There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.").

UTICA further argues that any damages being claimed in CRES' negligent interference cause of action are for lost business and disgorgement, which (1) do not fall within the policy's definition of "loss" and (2) is a matter which may be deemed uninsurable under applicable law. See UTICA Mem. Supp. Mot. Summ J., 14. As to (1), the California Superior Court has precluded CRES from seeking restitution or disgorgement because "it has neither an ownership interest nor a vested interest in policy premiums that it has not earned by providing coverage," but explained that "at most, [CRES] has an expectancy of future profits" and that "[c]ompensation for a lost business opportunity is not restitution." Landy Facts Ex. 7B. Therefore, to the extent that CRES is able to seek compensation for a lost business opportunity, that compensation would not constitute restitution, but damages, and would fall under the policy's definition of "loss."

As to (2), UTICA argues that compensation for a lost business opportunity constitutes a matter deemed uninsurable under applicable law. The thrust of this argument is that a "loss" within the meaning of an insurance contract does not include the restoration of an ill-gotten gain. As stated above, CRES may not seek restitution and disgorgement in the underlying action, but may only seek damages. Traditional tort damages would be based on the total economic harm that CRES suffered rather than the amount that Landy gained from its conduct. These damages, therefore, would not consist of the restoration of an ill-gotten gain and would not constitute a matter deemed uninsurable under applicable law.

B. *Exclusions*

UTICA argues that two of the policy's exclusions—Section III.1 and III.9—operate to exclude coverage for the underlying action. Section III.1 excludes coverage for "[a]ny active and deliberate, dishonest, criminal, fraudulent, malicious, or knowing conduct committed or alleged to have been committed by or at the direction of the insured." UTICA Facts ¶ 28; Landy Facts ¶38. As recounted above, the third amended complaint not only alleges that Landy unfairly competed with CRES by way of intentional illegal conduct, but also includes a claim based on negligence. Because the underlying complaint alleges claims based on both (1) active, deliberate, and knowing conduct and (2) negligent conduct, Section III.1 of the policy is applicable. Section III.1 provides that, where there are mixed claims, UTICA must "defend [Landy] in the trial court, but [it] shall not have any liability for any judgment for dishonest, fraudulent, malicious, or criminal conduct nor shall [it] have any further obligation to defend after judgment in the trial court." See id. Accordingly, UTICA must continue to defend Landy in the trial court, but has no duty to defend it after the trial court enters judgment and is not liable for any damages for dishonest or fraudulent conduct.

Second, UTICA argues that Section III.9's exclusion for "unfair competition of any type" excludes coverage for the underlying action. Landy counters that because the policy does not define unfair competition, the term is ambiguous and, therefore, Massachusetts law defining that term fills the gap. Massachusetts courts interpret the term "unfair competition" in a general commercial liability insurance policy as being limited to the injury of "palming off," see Open Software Found., Inc. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 17–19 (1st Cir. 2002) (citing Smartfoods, Inc. v. Northbrook Prop. & Cas. Co., 618 N.E.2d 1365, 1368 (Mass. App. Ct. 1993)), and CRES does not allege such an injury.

UTICA makes two arguments in response. First, it argues that case law, in particular, Welch Foods, Inc., extends the meaning of "unfair competition" beyond "palming off," as the court in that case found that underlying lawsuits for false advertising against the insured fell within the exclusion for claims based on unfair competition and deceptive trade practices in one of the insured's policies, 2010 WL 3928704 at *1–2. Welch Foods, Inc., however, is distinguishable because the policy exclusion in that case was "broad enough to include a variety of anti-competitive behavior," as the policy language also excluded claims for deceptive trade practices. Id. at 2. The policy here does not. UTICA's better argument is that the policy excludes "unfair competition of any type," UTICA Facts ¶ 28, Landy Facts ¶30 (emphasis added). If the prepositional phrase "of any type," which modifies the term "unfair competition," is to be given any meaning, then the phrase works to broaden the exclusion as it contemplates multiple types of unfair competition claims and brings any of those types of claims within the exclusion.

Based on these plain words, Section III.9's exclusion covers more than just unfair competition claims based on palming or passing off, and, thus, covers CRES' unfair competition claims against Landy. See GRE Ins. Grp. v. Metro. Boston Hous. P'ship, Inc., 61 F.3d 79, 81 (1st Cir. 1995) (Citing Massachusetts case law for the proposition that a court must give policy language its plain and ordinary meaning and consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered") (quotation marks and citation omitted). The problem for UTICA, however, is that even if this exclusion covers CRES' unfair competition claims, CRES still pleads an independent cause of action based on negligence. UTICA contends that CRES' negligence-based claim is essentially a dressed up unfair competition claim. Even if that were in some sense true, (1) the possibility remains that Landy

14

may be held liable for negligence, and (2) the exclusion for "unfair competition of any type" is not so broad as to reach a negligence claim that is based on conduct that could also be described as unfair competition. See Simplex Techs., Inc. v. Liberty Mut. Ins. Co., 706 N.E.2d 1135, 1136 (Mass. 1999) ("[T]he process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether <u>any</u> such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.") (quotation marks and citation omitted) (emphasis added).

Accordingly, because UTICA has a duty to defend Landy in the underlying action so long as the complaint adumbrates any claim within the scope of the policy, UTICA must continue to defend Landy, but UTICA would not be liable for losses arising from CRES' first cause of action for unfair business practices.

   C.   *Attorneys' Fees*

In light of UTICA's duty to defend Landy in the underlying action, Landy is entitled to an award of attorneys' fees and legal expenses incurred in connection with this action. See Hanover Ins. Co. v. Golden, 766 N.E.2d 838, 840 (Mass. 2002) ("The entitlement of an insured to attorneys' fees and costs incurred in establishing contested coverage depends exclusively on whether that coverage is ultimately determined to exist.") (quotation marks and citation omitted).

IV:   Conclusion

For the foregoing reasons, UTICA's Motion for Summary Judgment [#47] is DENIED and Landy's Motion for Partial Summary Judgment [#46] is ALLOWED. The court dismisses in its entirety UTICA's complaint for a declaratory judgment [#1] and declares that (1) UTICA owes Landy a duty to defend it against all claims asserted by CRES in the underlying action in accordance with Section II.1.a. and 2 of the insurance policy issued by UTICA to Landy, at least

through final judgment in that action in the trial court where it is pending, and (2) any decision with respect to UTICA's duty to indemnify Landy against any judgment in the underlying action is premature at this time. UTICA is liable for the reasonable attorneys' fees and legal expenses that Landy has incurred in connection with this action.

      IT IS SO ORDERED.

Date: October 28, 2014                                                              /s/ Indira Talwani
                                                                                       United States District Judge